FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
ROME DIVISION

2014 APR 30 PM 1:57

M. REGINA THOMAS
CLERK

BY
DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| In re: The Bernstein Company, LLC, : | Case No. 12-42142-MGD |
| : | Chapter 11 |
| Debtor. : | |
| : | |

---

## DEBTOR'S MOTION FOR AN ACCOUNTING, REDUCTION OF FEES, EQUITABLE RELIEF AND RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT

COMES NOW, Debtor The Bernstein Company ("Debtor"), and files this Motion for an Accounting, Reduction of Fees, Equitable Relief, and Reconsideration of the Court's Order denying Debtor/Plaintiff's Motion for Summary Judgment, and shows as follows:

1.  Debtor files this Motion to bring to the Court's attention specific issues relating to: 1. The lack of any basis for appointing a Trustee in this proceeding and the false pretenses that were presented to the Court in order to justify the Trustee's appointment; 2. The Trustee's failure to responsibly manage the legal affairs of Debtor; 3. The Trustee's mismanagement of Debtor's business and operations, causing continuing and perhaps permanent damage to Debtor; and 4. The excessive fees charged by the Trustee.

1

### Appointment of the Trustee

2. Debtor voluntarily filed a Voluntary Petition for Chapter 11 bankruptcy on July 18, 2012. [Doc. #1].

3. At the time of filing of the Petition, Debtor owned one hotel in Rome, Georgia (a Hampton Inn), and managed another (a Comfort Suites, also in Rome). Debtor sold a third property in 2011, a Town & Country Inn in Chattanooga, Tennessee.

4. On August 28, 2012, the Office of the Trustee filed a Motion for Expedited Hearing and to Convert this proceeding to a Chapter 7 Petition, purportedly on the grounds that the Debtor had failed to maintain adequate insurance for its assets. [Doc. # 19].

5. In fact, there was never any material time in which the Debtor was without adequate insurance prior to the appointment of the Trustee. Debtor maintained at the time of filing by the Office of the Trustee liability and workers' compensation insurance on both hotels in Rome, with "balloon coverage" in the amount of $10,000,000.

6. No specific grounds for the appointment of a trustee ever existed in this case pursuant to 11 U.S.C. § 1104, as acknowledged by the United States

2

Trustee himself in his Motion for an Order Directing the Appointment of a Trustee. [Doc. # 32].

7. On September 27, 2012, Christopher A. Tierney ("Tierney", or the "Trustee") was appointed as the Chapter 11 Trustee. [Doc. # 41]. Attorney John W. Mills, III ("Mills") subsequently appeared as counsel for Tierney. [Doc.s ## 51, 62]. Mills, in turn, employed an outside "financial advisor" for the Trustee in connection with the estate. [Doc.s ## 56, 63] Mills also employed another firm to act as "Non-Bankruptcy Professionals". [Doc.s ## 78, 82].

8. As set forth below, not only was the appointment of the Trustee unwarranted, the Trustee following his appointment violated his fiduciary and other duties owed to the Debtor in connection with his office. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he fiduciary duty of the trustee runs to shareholders as well as to creditors."); *In re Vebeliunas*, 231 B.R. 181, 192 (Bankr. S.D.N.Y. 1999) ("These fiduciary duties [of a trustee] are owed not only to the entire creditor body but to the debtor as well.")

### The Comfort Inn & Suites Property

9. On June 7, 2007, JDH Developers a/k/a Comfort Inn & Suites of Rome, GA, LLC ("JDH") and the Debtor executed a purchase and sale agreement

for a Comfort Suites Hotel property located at 23 Chateau Drive, S.E., Rome, Georgia. (The "Comfort Suites Property").

10. At the time construction of the Comfort Suites Property was completed in the fourth quarter of 2008, the country was in the grips of a credit crisis and recession, and financing for the purchase of the Property was unavailable. The agreement therefore was amended on November 13, 2008 [Doc. # 16, ¶¶ 14-16] whereby Debtor would manage the Comfort Suites Property until such time as financing would become available.

11. When financing became available, fair market value as well as financing had to be based on the Comfort Suites Property's profit and loss. Debtor was willing to establish a price based on the highest value that could be financed, but JDH would not negotiate in good faith.

12. JDH eventually sold the property for $3.3 million -- an amount that Debtor could have financed.

13. JDH used its possession of a purchase deposit of $405,000 provided by Debtor in 2007 to leverage a deal that it was told by its own agent was impossible, so that it could keep the deposit and sell the Comfort Suites Property to a third party.

4

14. On information and belief, the Trustee engaged in self-dealing at the expense of Debtor in connection with the Comfort Suites Property.

15. The Trustee also unreasonably delayed filing an adversary case against JDH for the return of Debtor's $405,000 deposit. [Doc. # 107]. The action that was ultimately filed failed to state a cause of action based on the fact that JDH refused to negotiate in good faith and violated the covenant of good faith and fair dealing implied in the agreements between the parties. This cause of action would have raised important equitable considerations and would have had a reasonable chance of success.

16. The Trustee's unreasonable refusal to bring that equitable claim resulted in the Court on January 22, 2014 denying Debtor's motion for summary judgment and awarding the $405,000 deposit to JDH. The loss of that deposit was directly due to the inadequacies of the Trustee. Debtor seeks to have the Court reconsider that ruling.

**The Hampton Inn Property**

17. At the time the Petition was filed, Debtor owned and operated a Hampton Inn Property located at 21 Chateau Drive, S.E., Rome, Georgia. (The "Hampton Inn Property"). Debtor was responsible for maintaining and operating

5

the Hampton Inn Property to the exacting standards mandated by Hampton's franchise company, Hilton Worldwide. [Doc. # 16, ¶¶ 18, 20].

18. Following his appointment, the Trustee became responsible for managing the Hampton Inn Property and ensuring that it complied with Hilton's standards. The Trustee failed to do so in numerous ways, including, but not limited to:

   a.   The Trustee failed to install the Perfect Mix Lobby ("PML") required by Hilton. Debtor, prior to the Trustee's appointment, had already paid an initial deposit towards a design of the PML and had a design firm submit the plan for Hilton's approval within the required deadline. The deadline for completing the PML was December 31, 2013. Had it not been prevented from completing the PML by the appointment of the Trustee, Debtor would have timely completed the project. Now, because of the exorbitant administrative fees incurred by the Trustee and the Trustee's hording of money to pay those fees, the Hampton Inn Property failed its February, 2014 inspection.

   b.   The Trustee failed to pay bills timely, resulting in interruption of service and temporary cancellation of insurance.

6

  c. The Trustee's attempt to auction the Hampton Inn Property and liquidate the business resulted in publicity in the local newspaper for the auction, which damaged the hotel's business and demoralized its staff.

  d. Prior to the Hampton Inn Property's management being handed over to the Trustee, Debtor had kept up with its Hilton franchise fees. The Trustee failed to pay the franchise fees [Doc. # 104], allowing them to lapse beyond what is allowed.

  e. The Trustee undermined the good will Debtor had with the secured creditor of the Hampton Inn Property, Community National Bank ("CNB"), which had to spend valuable resources defending itself from an action for administrative fees.

  f. The Trustee also undermined the good will Debtor had with service providers, staff, management, insurance agents, guests, etc., by draining the company of resources it needed to meet obligations and failing to renovate as necessary over an extended period of time.

  19. As a result of the Trustee's mismanagement, on February 14, 2014, a Hilton inspection report concluded that there were "significant areas not meeting Hampton Brand Standards", and the Hampton Inn Property is at risk of losing its franchise. The Trustee, in connection with his mismanagement of the Hampton

7

Inn Property, misspent approximately $150,000 that was needed to maintain the Hilton franchise flag, which Debtor is now at risk of losing because of the Trustee's acts and omissions.

20. As a result of the Trustee's failure to install the PML and the failed inspection, Hilton now has the right to rescind Debtor's franchise at any time. The Trustee failed to engage in any strategic planning for this eventuality. This has placed Debtor in a situation where there are no reserves to bid for a premium flag, and there are no resources to undertake the renovations which would be necessary to maintain its current flag or bid for another flag.

21. In short, the Hampton Inn Property was run by the Trustee not in a manner to help a solvent business continue and thrive, but rather in a manner to generate unmanageable debt so that it could be sold and liquidated.

### General Mismanagement of Legal and Financial Affairs

22. At the time the Petition was filed, Debtor was working on several projects related to the settling of accounts in connection with the new owners of the Town & Country hotel in Tennessee, CHAT-TN, LLC. With the appointment of the Trustee, Debtor lost control of the company bank accounts and the right to act in the name of the company, and those settlement activities lapsed. In addition, the Trustee failed to raise any substantive objections to Chattanooga-

8

related tax and unemployment claims. The Trustee failed to interview former employees and to do what was required to understand these matters and to raise substantive defenses.

23. Debtor's losses incurred by the mismanagement by the Trustee include cash being removed from registers without authorization, utility payments made by Debtor that were supposed to be prorated, unauthorized use of Debtor's checking account, the Trustee's failure to return rented credit card machines, and many other items.

24. Debtor had also initiated two valid lawsuits, both of which the Trustee chose not to pursue.

### Excessive Billing and Charges

25. Despite this dismal lack of responsible management, throughout this proceeding the Trustee filed "Monthly Financial Reports", showing exorbitant expenses and fees, which were not only not justified, but which further drained Debtor of the resources needed to operate successfully.

26. As of December 2013, the total fees incurred by the Trustee, his attorney and their consultants were in excess of $270,000. These expenses, especially in light of the mismanagement of the Trustee, are excessive, and an accounting is warranted.

9

27. In addition, to date the Trustee has left the Debtor with in excess of $100,000 in unpaid bills.

28. In its December 19, 2013 Order Abandoning Hampton Inn, [Doc. # 191] the Court, *inter alia*, relieved the Trustee of any further obligations regarding the Hampton Inn, but allowed the Trustee to retain $87,096.56 of cash currently held in the Debtor's accounts.

29. The excessive fees the Trustee has received are monies Debtor needs to apply for a new flag and bring its hotel up to the standards under the new franchise. Given the financial straits in which the Trustee has left Debtor, its options are extremely limited.

30. The individuals associated with Debtor invested virtually all their personal resources in order to see the business through difficult times. Equity demands that the Debtor be restored, to the extent possible, to the position it was in before the appointment of the Trustee, or alternatively, to a reduction in administrative fees to those reasonably earned and justified.

WHEREFORE, Debtor respectfully requests that this Court order an accounting of the expenses and activities of the Trustee and his agents in connection with the Trustee's acts and omissions in connection with this

proceeding. Debtor also requests that the Court reconsider its January 22, 2014 order denying the Trustee's motion for summary judgment.

Debtor respectfully requests that the Court set this matter for oral argument, at which Debtor can present evidence and testimony substantiating the matters set forth in this Motion.

Dated: April 29, 2014

>Respectfully submitted,
>
>THE GRIMES LAW FIRM
>
>By: _____
>KaRon L. Grimes
>Georgia Bar No. 782008
>3965 Holcomb Bridge Road
>Suite 200
>Peachtree Corners, Georgia 30092
>Phone: (678) 232-6208
>Fax: (678) 264-0988
>jubileecounsel@gmail.com
>*On behalf of the Debtor*

## CERTIFICATE OF SERVICE

I, KaRon Grimes, certify that I have on this date served a true and correct copy of Debtor The Bernstein Company's Motion for an Accounting, Reduction of Fees, Equitable Relief, and Reconsideration of the Court's Order denying Debtor/Plaintiff's Motion for Summary Judgment, as well as the Notice for Hearing of Same on the following parties via United States Mail, first class postage pre-paid:

Martin P. Ochs
Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, SW
Atlanta, Georgia 30303

Wendell S. Agee
P.O. Box 2374
Buford, Georgia 30515

John W. Mills, III
Prominence in Buckhead
Suite 1700
3475 Piedmont Road, NE
Atlanta, Georgia 30305-2954

Dated this 29th day of April, 2014

KaRon L. Grimes